*967
 
 Opinion
 

 O’NEILL, J.
 
 *
 

 Defendant U.S. Citizens Patrol (Citizens Patrol) appeals portions of an order granting a motion by San Diego Unified Port District (District) for a preliminary injunction restricting certain activities by Citizens Patrol at the San Diego airport. Citizens Patrol contends the challenged portions of the injunction are unconstitutional because (1) they regulate political speech based on its content; (2) they constitute a prior restraint of political speech; (3) they are overbroad; and (4) they violate the Citizens Patrol’s right to travel and the equal protection clause of the Fourteenth Amendment. We reverse the challenged portions of the injunction.
 

 Factual and Procedural Background
 

 Citizens Patrol is an association of citizens concerned about problems associated with illegal immigration in San Diego County. The organization was formed specifically to monitor whether commercial airlines at the San Diego International Airport (the airport) were complying with a Federal Aviation Administration (FAA) requirement that the airlines check passengers’ photographic identification before allowing them to board airplanes or check baggage.
 
 [1]
 

 Beginning on May 3, 1996, members of the Citizens Patrol went to the airport to observe the various airlines’ baggage check-in and boarding procedures. When they observed noncompliance with the FAA identification-check requirement, they brought it to the attention of the noncomplying ticket agents or other airline representatives. Their aim in exacting compliance with the FAA requirement was to ensure that undocumented immigrants were not allowed to board airplanes leaving San Diego. The Citizens Patrol limited its activities in the airport to walking through the terminals and speaking with airline employees. The members of the Citizens Patrol did not contact any other people in the airport. While engaged in their airport activities, the members of the Citizens Patrol wore blue T-shirts bearing the words “U.S. Citizens Patrol” in yellow on the back and a small yellow emblem on the front left pocket.
 

 
 *968
 
 On May 21, 1996, members of the Chicano Federation (Federation) held a press conference in one of the airport terminals to protest the activities of the Citizens Patrol. The Federation issued a press release stating it was committed to documenting and filming the activities of the Citizens Patrol and stopping its illegal activities “by any means necessary.”
 

 Citizens Patrol member Jim Baxter walked over to the area where the press conference was being held. Members of the Federation saw him and began moving toward him while shouting, chanting, and clapping in a loud and disruptive manner. Baxter walked away from the Federation members, but they followed him and continued to chant and shout at him in a threatening manner. To diffuse the situation, several San Diego Harbor Police officers asked Baxter to leave the terminal. He agreed and the officers escorted him outside, followed by a crowd of Federation members and the media. Outside, the Federation members surrounded Baxter and continued shouting, chanting, and clapping for several minutes until a car arrived to pick him up.
 

 The next day the District filed a complaint for injunctive relief seeking to restrain the Federation and the Citizens Patrol from causing further disturbance at the airport.
 
 [2]
 
 The court granted the District’s application for a temporary restraining order and later granted the District’s motion for a preliminary injunction. The preliminary injunction ordered:
 
 *969
 
 defendant or its officers, directors, employees, members and agents, such as shouting, chanting or cursing;
 

 
 *968
 
 “1. That defendants, and each of them, their officers, agents representatives, members, and all others acting for, on behalf of, or in concert with them, or any of them, be permanently enjoined and restrained during the pendency of this action as follows:
 

 “a. Entering or utilizing the grounds and/or facilities of the San Diego International Airport, except to utilize the airport facilities as an arriving or departing passenger, to transport arriving or departing passengers to or from the airport, at or around the time of such arrival or departure, to pick up or deliver packages, to purchase or return airline tickets, or to transact other legitimate business with airport tenants;
 

 “b. Seeking, soliciting or requesting to view photo or other identification of any individual on the grounds of the San Diego International Airport, or perform other security functions at the San Diego International Airport;
 

 “c. Engaging in any conduct on the grounds of the San Diego International Airport that is threatening, coercive or intimidating to the other
 

 
 *969
 
 “d. Knowingly passing within 100 yards of one another anywhere on the grounds of the San Diego International Airport, except as may [be] necessary for ingress and egress from the airport;
 

 “e. Engaging in any other activity or conduct on the grounds of the San Diego International Airport except at the locations designated with the letter “X” for defendant [Citizens Patrol] and “Y” for defendant Federation on the maps of the East and West Terminals of the San Diego International Airport, attached hereto and incorporated herein as exhibits A and B, and in no event in any one group larger than three (3) individuals at any one designated location.”
 
 [3]
 

 Citizens Patrol challenges only paragraphs la and le of the preliminary injunction.
 

 Discussion
 

 I.
 
 Standard of Review
 

 The parties disagree on the standard of review to be applied to the preliminary injunction. Citizens Patrol contends the independent review standard applies; the District contends we should review only for an abuse of discretion. We agree with Citizens Patrol that the independent review standard applies.
 

 When review of a preliminary injunction involves “solely a question of a violation of law the standard of review is not abuse of discretion but whether statutory or constitutional law was correctly interpreted and applied by the trial court. . . .”
 
 (California Assn, of Dispensing Opticians
 
 v.
 
 Pearle Vision Center, Inc.
 
 (1983) 143 Cal.App.3d 419, 426 [191 CaLRptr. 762].) In the instant case there is no factual dispute between Citizens Patrol and the District.
 
 [4]
 
 Rather, the appeal presents purely legal issues as to whether the challenged portions of the preliminary injunction violate constitutional law. Therefore, we independently review the challenged portions of the injunction.
 

 
 *970
 
 II.
 
 “Heckler’s Veto”
 

 “The First Amendment provides that ‘Congress shall make no law . . . abridging the freedom of speech ... or the right of the people peaceably to assemble . . . .’ [Citation.] These rights are safeguarded against state interference by the due process clause of the Fourteenth Amendment. [Citation.] Furthermore, it is settled that when ... the judicial process is invoked to restrict expressive activities on public property, ‘state action’ is implicated entitling the aggrieved party to the protection of the First and Fourteenth Amendments. [Citations.]”
 
 (.Planned Parenthood Shasta-Diablo, Inc.
 
 v.
 
 Williams
 
 (1994) 7 Cal.4th 860, 868 [30 Cal.Rptr.2d 629, 873 P.2d 1224].)
 

 Article I, section 2, subdivision (a) of the California Constitution provides, in part: “Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.” California courts view these “free speech provisions as more protective, definitive and inclusive of rights to expression of speech than their federal counterparts. . . .”
 
 (Lopez
 
 v.
 
 Tulare Joint Union High School Dist.
 
 (1995) 34 Cal.App.4th 1302, 1327 [40 Cal.Rptr.2d 762].)
 

 The right to free speech is constitutionally protected from censorship by hostile reaction, sometimes referred to in case law as a “heckler’s veto.” (See
 
 Steffan v. Aspin
 
 (D.C. Cir. 1993) 8 F.3d 57, 68 [303 App.D.C. 404].) “The First Amendment forbids the government to silence speech based on the reaction of a hostile audience, unless there is a ‘clear and present danger’ of grave and imminent harm. [Citation.] Otherwise, a vocal minority (or even majority) could prevent the expression of disfavored viewpoints—a result contrary to the central purpose of the First Amendment’s guarantee of free expression. [Citations.] [¶] These constitutional principles mandate that government may not disadvantage a person on the basis of his status or his views solely for fear that others may be offended or angered by them. . . . The Constitution does not allow government to subordinate a class of persons simply because others do not like them.”
 
 (Id.
 
 at pp. 68-69.) “ ‘[Constitutional rights may not be denied simply because of hostility to their assertion or exercise.’ [Citation.]”
 
 (Cox
 
 v.
 
 Louisiana
 
 (1965) 379 U.S. 536, 551 [85 S.Ct. 453, 462, 13 L.Ed.2d 471].)
 

 The District does not contend the Citizens Patrol engaged in any conduct that was in and of itself enjoinable, improper or illegal, nor does the record reflect any such conduct. The injunction of the Citizens Patrol was
 
 *971
 
 based solely on the Federation’s hostile reaction to the Citizens Patrol’s presence in the airport. Although the Federation accused the Citizens Patrol of engaging in law enforcement activities and harassing persons at the airport who appeared to be Mexican, there is no evidence in the record that the Citizens Patrol actually engaged in such conduct or any other illegal or improper conduct at the airport.
 
 [5]
 
 Nor is there any evidence the Citizens Patrol actively contributed to the disruption which caused the District to seek injunctive relief. That disruption consisted solely of the hostile reaction of Federation members and sympathizers to the presence of a Citizens Patrol member at the airport.
 

 The preliminary injunction attempts to prevent future disruptions by casting too fine a net. Citizens Patrol, engaging in lawful and passive conduct, was scooped up with the Federation, some of whose supporters aggressively confronted a Citizens Patrol member. Because the injunction subjects Citizens Patrol’s right to engage in protected speech to the censorship of a group who disagrees with its content, it constitutes an impermissible “heckler’s veto” of Citizens Patrol’s protected speech.
 

 III.
 
 The Challenged Portions of the Preliminary Injunction Unnecessarily Burden Citizens Patrol’s Speech
 

 Even if there is a basis to enjoin certain conduct by Citizens" Patrol members, the injunction here goes much further than necessary to provide the relief sought by the District.
 

 Under the most lenient standard of constitutional review applicable to injunctions that restrict speech—the standard applicable to content-neutral injunctions—the court must consider “whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest. . . .”
 
 (Madsen
 
 v.
 
 Women’s Health Center, Inc.
 
 (1994) 512 U.S. 753, 765 [114 S.Ct. 2516, 2525, 129 L.Ed.2d 593];
 
 People
 
 ex rel.
 
 Gallo
 
 v.
 
 Acuna
 
 (1997) 14 Cal.4th 1090, 1115 [60 Cal.Rptr.2d 277, 929 P.2d 596].) This standard is consistent with the general rule, apart from constitutional considerations, “ ‘that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.’ [Citations.]”
 
 (Madsen
 
 v.
 
 Women’s Health Center, Inc., supra,
 
 512 U.S. 753, 765 [114 S.Ct. 2516, 2525].) Accordingly, we must consider whether the challenged portions of the preliminary injunction at issue here are “broader
 
 *972
 
 than constitutionally sustainable.”
 
 [People
 
 ex rel.
 
 Gallo
 
 v.
 
 Acuna, supra,
 
 14 Cal.4th at p. 1115.)
 
 [6]
 

 The significant governmental interest served by the District’s bid for injunctive relief is the prevention of further confrontations between the Citizens Patrol and the Federation that could obstruct ingress to and egress from the airport and pose a security risk and risk of injury. This interest is fully served by the three paragraphs of the injunction not challenged in this appeal. Paragraph lb prohibits members of Citizens Patrol (as well as the Federation) from checking any person’s identification at the airport or performing any other security function. Paragraph lc prohibits the members of Citizens Patrol and the Federation from “[e]ngaging in any conduct on the grounds of the San Diego International Airport that is threatening, coercive or intimidating to the other defendant or its officers, directors, employees, members and agents, such as shouting, chanting or cursing.” Paragraph Id prohibits members of the Citizens Patrol and the Federation from “[k]nowingly passing within 100 yards of one another anywhere on the grounds of the San Diego International Airport, except as may be necessary for ingress [to] and egress from the airport.” Compliance with these provisions of the injunction completely eliminates the risk of a confrontation between Citizens Patrol and the'Federation at the airport and any attendant risk to airport security, risk of injury, or obstruction of general ingress and egress.
 

 The challenged portions of the injunction unnecessarily burden Citizens Patrol’s speech and expression inside the airport without significantly furthering the governmental interest served by the unchallenged portions. Paragraph la limits the activities of Citizens Patrol members inside the airport to typical airport activities associated with arriving and departing flights and the transaction of “other legitimate business with airport tenants.”
 
 [7]
 
 This means a Citizens Patrol member would violate the injunction by engaging in
 

 
 *973
 
 Paragraph le prohibits Citizens Patrol members from “[e]ngaging in any other activity or conduct on the grounds of the San Diego International Airport except at [designated locations outside the airport terminals.]” Like paragraph la, this provision on its face bars members from engaging in
 
 any
 
 speech or expressive activities inside the airport terminals except those related to flight arrival and departure and the business of airport tenants. Such a comprehensive ban on activities protected by the First Amendment and article I, section 2, subdivision (a) of the California Constitution imposes a far greater burden on the Citizens Patrol’s right to free speech than is necessary to serve the District’s legitimate interest in preventing airport confrontations between Citizens Patrol and the Federation. Thus, under the
 
 Madsen
 
 standard, the portions of the preliminary injunction challenged by the Citizens Patrol are unconstitutional.
 

 Disposition
 

 The order granting a preliminary injunction is reversed as to paragraphs la and le. Those paragraphs are vacated. The order is otherwise affirmed. Citizens Patrol is awarded costs on appeal.
 

 McDonald, Acting P. J., and McIntyre, J., concurred.
 

 [1]
 

 Citizens Patrol’s own mission statement is as follows: “The mission of the U.S. Citizens Patrol is to create public awareness of the problems with illegal immigration within San Diego County.- In this regard, U.S. Citizens Patrol will engage in First Amendment activities throughout San Diego, including, but not limited to, visiting the San Diego International Airport in order to ascertain from all airlines if they are enforcing the [FAA’s] level three security procedures and to exercise our rights to freedom of speech, association, and to petition the government for redress of grievances.”
 

 [2]
 

 The complaint sought injunctive relief based on causes of action for trespass and public nuisance.
 

 [3]
 

 The designated “X” and “Y” locations are outside the airport terminals.
 

 [4]
 

 Citizens Patrol does not contend there was an insufficient factual or legal basis to grant
 
 any
 
 injunctive relief. As noted, Citizens Patrol does not challenge paragraphs lb through Id of the injunction.
 

 [5]
 

 Agents of the Federal Bureau of Investigation followed members of the Citizens Patrol at the airport and determined they were not violating any laws.
 
 *973
 
 to the injunction guessing as to what is proscribed and invites arbitrary and discriminatory enforcement by giving law enforcement officers unbridled discretion as to what constitutes “legitimate business” with airport tenants.
 
 (Springfield
 
 v.
 
 San Diego Unified Port Dist. (S.D.
 
 Cal. 1996) 950 F.Supp. 1482, 1488-1489.)
 

 [6]
 

 Because we conclude the challenged portions of the injunction are unconstitutional under the lenient standard applicable to content-neutral injunctions, we need not decide whether they constitute a prior restraint or other content-based restriction subject to stricter constitutional scrutiny.
 
 (Widmar
 
 v.
 
 Vincent
 
 (1981) 454 U.S. 263, 269 [102 S.Ct. 269, 274, 70 L.Ed.2d 440] [standard of review appropriate to content-based exclusions requires showing that regulation is necessary to serve a compelling state interest];
 
 Wilson
 
 v.
 
 Superior Court
 
 (1975) 13 Cal.3d 652, 657 [119 Cal.Rptr. 468, 532 P.2d 116] [“prior restraint on expression bears a heavy presumption against its constitutional validity”].) Nor do we need to decide whether the challenged portions of the injunction infringe constitutional rights to travel and equal protection.
 

 [7]
 

 The “legitimate business” exception to the restriction on Citizens Patrol’s use of the airport is vague as to the meaning of “other legitimate business with airport tenants.” Arguably, discussing compliance with FAA regulations with airline employees constitutes transaction of “legitimate business with airport tenants.” Thus, the “legitimate business” provision is problematic under the void-for-vagueness doctrine because it leaves those subject
 
 *973
 
 virtually any speech in the airport unrelated to transacting business with an airline or other airport tenant. For example, a member waiting for a departing flight would violate paragraph la by engaging in a conversation about illegal immigration, or any other political issue, with another waiting passenger. A member of the Citizens Patrol would certainly violate paragraph la by handing out leaflets expressing the views of Citizens Patrol at the airport, an activity the United States Supreme Court has specifically held is protected by the First Amendment.
 
 (Lee
 
 v.
 
 International Soc. for Krishna Consciousness, Inc.
 
 (1992) 505 U.S. 830, 831 [112 S.Ct. 2709, 2710, 120 L.Ed.2d 669].)