[No. A083723. First Dist., Div. Two. July 8, 1999.]

TRADER JOE'S COMPANY, Plaintiff and Respondent, v.
PROGRESSIVE CAMPAIGNS, INC., et al., Defendants and Appellants.

**COUNSEL**

Gronemeier & Associates, Dale L. Gronemeier and Marina A. Llata for Defendants and Appellants.

O'Melveny & Myers, Gordon E. Krischer, Douglas E. Dexter and Wm. Franklin Birchfield III for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Appellants attempted to obtain signatures for initiative petitions from individuals patronizing the Trader Joe's store in Santa Rosa. Trader Joe's objected and halted the petitioning activity being conducted in front of its store entrance. In its subsequent trespass action, Trader Joe's obtained a preliminary injunction banning appellants from soliciting signatures at the Santa Rosa Trader Joe's during the pendency of this action. Appellants appeal that preliminary injunction order. The primary issue on appeal is whether the state constitutional right to engage in expressive activity on private property, which was recognized by our Supreme Court in *Robins* v. *Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341] (*Pruneyard*), protects the challenged activity.

We hold that Trader Joe's is likely to succeed on the merits of its claim that the challenged activity is not constitutionally protected and affirm the preliminary injunction order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 1998, Trader Joe's filed a complaint seeking injunctive relief and damages for trespass against Matthew Temple (Temple), Progressive Campaigns, Inc. (Progressive), and others. The complaint alleges that Trader Joe's is in possession of and does business at a "free-standing modest retail store and parking lot" located in Santa Rosa (hereafter, the Santa Rosa Trader Joe's or the premises). It further alleges that, commencing on or about March 29, 1998, defendants entered these premises several times to solicit signatures from Trader Joe's patrons. Defendants allegedly engaged in these activities without Trader Joe's consent, blocked the ingress and egress to the store, and harassed, threatened and intimidated patrons and employees of Trader Joe's. On the same day it filed its complaint, Trader Joe's obtained, ex parte, a temporary restraining order and an order directing defendants to show cause why they should not be enjoined during the pendency of the action from soliciting, petitioning or handbilling on Trader Joe's premises, obstructing or impeding ingress into or egress from Trader Joe's premises, or trespassing in any manner upon Trader Joe's premises.

Trader Joe's application for a preliminary injunction was based on the argument that its Santa Rosa store is a "modest specialty store" which is not

subject to the Supreme Court's holding in *Pruneyard* that state constitutional speech and petitioning rights may be exercised at privately owned shopping centers. Trader Joe's submitted two declarations by its Santa Rosa store manager, Ron Anderson. According to these declarations, the Santa Rosa Trader Joe's is a "specialty retail store." It is an approximately 11,000-square-foot stand-alone structure that is not part of a shopping center and does not share property with any other retailer. The only entrance to the store is a set of sliding glass doors at the front corner of the building. The Santa Rosa store has a parking lot, which is for the exclusive use of Trader Joe's patrons and employees. The lot contains 68 parking spaces. There is another parking lot adjacent to Trader Joe's property that Trader Joe's does not own or rely on to accommodate its customers.

Anderson further stated that he personally observed defendant, Temple, enter store property to solicit signatures from store employees and patrons, that he witnessed Temple's aggressive behavior and that he saw Temple block the store entrance. Temple refused Anderson's requests that he refrain from his petitioning activity and leave the store premises and told Anderson he would continue to solicit signatures at the Santa Rosa Trader Joe's. Anderson also stated that he received four complaints from customers about Temple and another defendant, Paul Toussaint.[1]

Opposing the application for a preliminary injunction, defendants argued that Trader Joe's cannot exempt itself from the holding of *Pruneyard* by mischaracterizing its stores as "modest retail establishments." Indeed, defendants characterized the Santa Rosa Trader Joe's as a "behemoth" shopping center where individuals must be permitted to reasonably exercise their free speech/petition/initiative rights. To support their position, defendants submitted the declaration of Mark Cartwright, an employee of defendant Progressive. Cartwright stated that Temple was working as an independent contractor for Progressive during the five-day period in April 1998 when Temple collected signatures for statewide initiatives at the Santa Rosa Trader Joe's. Cartwright opined that "[t]he fact that a successful petitioner such as Matthew Temple would go to the Santa Rosa Trader Joe's store for five days indicates to me that it per se is not a modest retail establishment but rather has a pedestrian traffic flow which categorizes it as a large retail store." Cartwright also stated that he tried to resolve the dispute that arose between Temple and Anderson but that Anderson refused to discuss the issue with him.

Defendants also submitted declarations from three individuals who stated they visited the Santa Rosa Trader Joe's during the period Temple was

---

[1]In addition to appellants, Trader Joe's also sued Paul Toussaint. Although the preliminary injunction applies to Toussaint, he is not a party to this appeal.

soliciting signatures there. These individuals, one of whom is a friend of Temple's family, did not see Temple behave aggressively or block patrons from entering or exiting the store. In addition, defendants submitted a declaration by Temple's mother who stated she often shops at the Santa Rosa Trader Joe's. According to Mrs. Temple, the store has over 100 shopping carts and over 50 hand baskets. She estimated that the store has 75 parking spaces in its own lot and 90 additional spaces available in the lot next door. In Mrs. Temple's opinion, Trader Joe's carries a wider range of products than convenience stores like 7-Eleven, the store has "continuous foot traffic, and its customers tend to be persons who are interested in public issues and therefore interested in issues posed by initiative petitions." Mrs. Temple also stated that Trader Joe's advertises regularly on the radio and invites the general public to come into its stores.

Finally, defendants submitted a declaration by their counsel, who now represents appellants. Attached thereto is literature that was allegedly downloaded from Trader Joe's Internet Web site. The literature indicates, among other things, that Trader Joe's has 113 stores across the country and that it distinguishes itself from other grocery stores as offering a large variety of unique items at low costs and as making shopping "fun."

The hearing on Trader Joe's motion for a preliminary injunction was held on June 4, 1998, before the Honorable Arnold D. Rosenfield. At the conclusion of that hearing, Judge Rosenfield adopted his tentative ruling and granted the preliminary injunction. The minute order indicates that the trial court found that Trader Joe's is not subject to the holding of *Pruneyard*, *supra*, 23 Cal.3d 899, because it is a "modest retail establishment" as opposed to a "large 'supermarket' type 'grocery store.' " Further, the court resolved the balancing of harms analysis in favor of granting the preliminary injunction, finding that Trader Joe's had sufficiently proven damage to its property rights resulting from defendants' conduct.

On August 3, 1998, Progressive and Temple (jointly, appellants) appealed the order granting the preliminary injunction.

### III. DISCUSSION

"To obtain a preliminary injunction, the plaintiff must establish the defendants should be restrained from the challenged activity pending trial. [Citations.] The plaintiff must show (1) a reasonable probability it will prevail on the merits and (2) that the harm to the plaintiff resulting from a refusal to grant the preliminary injunction outweighs the harm to the defendant from imposing the injunction. [Citation.] On appeal, a preliminary

injunction will be overturned only on a showing of abuse of discretion. [Citation.]" (*Bank of Stockton* v. *Church of Soldiers* (1996) 44 Cal.App.4th 1623, 1625-1626 [52 Cal.Rptr.2d 429] (*Bank of Stockton*).)[2]

## A.   *Is Trader Joe's Likely to Succeed on the Merits?*

To determine if Trader Joe's is likely to prevail on the merits, we must consider whether Trader Joe's can prohibit appellants from engaging in expressive activity at the Santa Rosa Trader Joe's. There is no contention in this case that appellants have a federal constitutional right to engage in the challenged activity.  ■  Indeed, the federal Constitution does not guarantee the right to engage in expressive activity at a privately owned shopping center when, as here, the speech is unrelated to any activity within the center itself and the citizen has adequate alternative avenues of communication, in the sense that he or she can engage in the activity elsewhere. (*Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551, 556 [92 S.Ct. 2219, 2222-2223, 33 L.Ed.2d 131].)  ■  Thus, resolving the current dispute requires us to determine whether appellants' state constitutional free speech and petitioning rights may be exercised at the Santa Rosa Trader Joe's. The parties have not cited nor have we found California precedent which addresses this precise issue. Our guiding authority is the Supreme Court's decision in *Pruneyard, supra*, 23 Cal.3d 899.

### 1.   *Pruneyard*

In *Pruneyard*, a group of high school students attempted to solicit public support for their opposition to a United Nations resolution against "Zionism" at the Pruneyard Shopping Center, a privately owned 21-acre center containing 65 shops, 10 restaurants and a cinema. (*Pruneyard, supra*, 23 Cal.3d at p. 902.) They set up a card table in the central courtyard, discussed their concerns with shoppers, and solicited signatures for a petition. Within a short time a security guard informed the group their activities violated Pruneyard regulations and that they would have to leave. Pruneyard's policy

---

[2]Appellants have failed to support their contention that an independent review standard should be applied. They improperly cite a case which has been superseded by grant of review. (*Horton Plaza Associates* v. *Playing For Real Theater* (Cal.App.).) Other authority they cite does not involve preliminary injunctions. (See *Long* v. *Valentino* (1989) 216 Cal.App.3d 1287, 1294 [265 Cal.Rptr. 96]; *Estate of Coate* (1979) 98 Cal.App.3d 982 [159 Cal.Rptr. 794].) Further, appellants ignore the fact that several cases, some upon which they rely for other propositions, apply the abuse of discretion standard to evaluate the grant or denial of a preliminary injunction with respect to the exercise of free speech activity on private property open to the public. (See, e.g., *Union of Needletrades, etc. Employees* v. *Superior Court* (1997) 56 Cal.App.4th 996, 1009 [65 Cal.Rptr.2d 838]; *Savage* v. *Trammell Crow Co.* (1990) 223 Cal.App.3d 1562, 1571 & fn. 2 [273 Cal.Rptr. 302]; *Bank of Stockton, supra*, 44 Cal.App.4th at p. 1626.)

was to not permit any tenant or visitor to engage in publicly expressive activity. (*Ibid.*) The teenagers filed suit and the trial court denied their request that Pruneyard be enjoined from denying them access to the center. (*Id.* at p. 903.) Our Supreme Court reversed. Finding that California affords greater free speech protection than the First Amendment, the *Pruneyard* court held that ". . . sections 2 and 3 of article I of the California Constitution protect speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." (*Id.* at p. 910.)[3]

In reaching its decision, the *Pruneyard* court was careful to not " 'minimize the importance of the constitutional guarantees attaching to private ownership of property.' " (*Pruneyard, supra,* 23 Cal.3d at p. 906.) The court noted, though, that the property owner's interests were not materially injured by the challenged activity in light of the fact that the owner had " ' "fully opened his property to the public." ' " (*Id.* at p. 910.) Further, the court recognized that " '[a]ll private property is held subject to the power of the government to regulate its use for the public welfare.' [Citations.]" (*Id.* at p. 906.) Here, affording strong protection to free speech and petitioning rights would serve the public welfare. The court reasoned that "[t]o protect free speech and petitioning is a goal that surely matches the protecting of health and safety, the environment, aesthetics, property values and other societal goals that have been held to justify reasonable restrictions on private property rights." (*Id.* at p. 908.) The court also recognized that the government's power to regulate property when the interests of the individual owner come in conflict with the interests of society is not static; property rights can and should be redefined to accommodate the conditions of modern life. (*Id.* at pp. 906-907.) The specific "condition of modern life" that grabbed the *Pruneyard* court's attention was the evolution of the suburban shopping mall and its particular suitability as a forum for expressive activity.

The *Pruneyard* court supported its holding with evidence in the record before it illustrating that suburban shopping centers were replacing central business districts as the favored forum for public congregation. Statistical evidence pertaining to the county where the Pruneyard Shopping Center was located showed that a huge percentage of the county's population lived outside the central San Jose planning area in surrounding suburban and rural communities and that the preferred places to shop were the large shopping centers located in those communities. (*Pruneyard, supra,* 23 Cal.3d at p.

---

[3]Article I, section 2, states in part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." (Cal. Const., art. I, § 2, subd. (a).) Article I, section 3, states: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." (Cal. Const., art. I, § 3.)

907.) That evidence led the court to conclude that "[t]he largest segment of the county's population is likely to spend the most significant amount of its time in suburban areas where its needs and wants are satisfied; and shopping centers provide the location, goods, and services to satisfy those needs and wants." (*Ibid.*)

Evidence of the role of the shopping center as a forum for public congregation was not limited to the particular shopping center at issue in *Pruneyard.* (*Pruneyard, supra,* 23 Cal.3d at p. 910 & fn. 5.) The court also relied on nationwide evidence illustrating that, among other things, there was a growing trend of successful shopping centers throughout the country, many of which were taking on the characteristics of "miniature downtowns" by including not just department stores but hotels, apartment houses, office buildings theaters and churches. (*Ibid.*)

Balancing the interest of the shopping center owner, in maintaining exclusive control over property he has opened to the public, against the societal interest, in utilizing the shopping mall as a public forum for expressive activity, the *Pruneyard* court concluded that the societal interest should prevail: "The California Constitution broadly proclaims speech and petition rights. Shopping centers to which the public is invited can provide an essential and invaluable forum for exercising those rights." (*Pruneyard, supra,* 23 Cal.3d at p. 910.) However, the court emphasized that "those who wish to disseminate ideas" do not "have free rein." (*Ibid.*) The *Pruneyard* court acknowledged that property owners who were required to allow free speech and petitioning activity on their property could adopt reasonable " 'time, place, and manner rules.' " (*Ibid.*) Further, the court noted that "we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment." (*Ibid.*) What was under consideration was a shopping center where 25,000 people per day accepted the property owner's invitation to congregate and to take advantage of numerous amenities. The court concluded that a " 'handful of additional orderly persons' exercising their speech and petitioning rights pursuant to reasonable regulations adopted by the shopping center owner would not 'markedly dilute defendant's property rights.' " (*Id.* at p. 911.)

### 2. *Trader Joe's*

In the present case, appellants argue that they may engage in free speech and petitioning activity at the Santa Rosa Trader Joe's pursuant to *Pruneyard* because the Santa Rosa store is not an individual residence or a "modest retail establishment." Advocating an equally narrow but opposite extreme interpretation of *Pruneyard,* Trader Joe's takes the position that *Pruneyard* does not apply because the Santa Rosa Trader Joe's is not a "shopping center." In our view, both parties oversimplify the relevant inquiry.

*Pruneyard* establishes that there is a state constitutional right to exercise free speech and petitioning activity on private property. However, the *Pruneyard* court *did not* purport to articulate the precise scope of that right. It did not hold that the free speech and petitioning activity can be exercised only at large shopping centers. Nor did it hold that such activities can be exercised on any property except for individual residences and modest retail establishments. Rather, in resolving the specific dispute before it, the court developed a balancing test which can be applied to other situations. *Pruneyard* instructs us to balance the competing interests of the property owner and of the society with respect to the particular property or type of property at issue to determine whether there is a state constitutional right to engage in the challenged activity.

Thus, we begin our analysis by examining the interests of the property owner. Trader Joe's does have constitutionally protected property interests. However, like the owners of the Pruneyard Shopping Center, Trader Joe's has voluntarily opened its property to the public. But Trader Joe's invitation to the public to visit its Santa Rosa store is more limited than the invitation made by a shopping center like Pruneyard. Trader Joe's invites people to come and shop for food and food-related items. It does not invite them to meet friends, to eat, to rest or to be entertained. Indeed, citizens are not invited to "congregate" at the Santa Rosa Trader Joe's. Thus, in our view, Trader Joe's interest in maintaining exclusive control over its private property is stronger than the interest of a shopping mall owner.

Similarly, the public's interest in using the Santa Rosa Trader Joe's as a forum for free speech and petitioning activity is not as strong as its interest in engaging in such activities at a large shopping center like Pruneyard. In contrast to Pruneyard, the Santa Rosa Trader Joe's is a single structure, single-use store. It contains no plazas, walkways or central courtyard where patrons may congregate and spend time together. The store sells food but has no restaurant or any place for patrons to sit and eat. Nor does the Santa Rosa Trader Joe's have a cinema or any other form of entertainment. There is evidence suggesting Trader Joe's may attract large numbers of people. But those people come for a single purpose—to buy goods. Further, because the store is a stand-alone structure, there can be no contention that its relationship to other establishments transforms it into a public forum. In short, the Santa Rosa Trader Joe's is not a public meeting place and society has no special interest in using it as such.

The *Pruneyard* court's conclusion that the societal interest in using shopping centers as forums for expressive activity outweighed the property interests of the shopping center owner was supported by tangible evidence

that shopping centers were supplanting central business districts as the preferred public forum, i.e., the place where people chose to come and meet and talk and spend time. In contrast, in the present case there is absolutely no evidence in any of appellants' declarations that the Santa Rosa Trader Joe's has assumed a comparable role. Thus, in contrast to the shopping center discussed in *Pruneyard*, the Santa Rosa Trader Joe's is not a public forum uniquely suitable as a place to exercise free speech and petitioning rights.

As illustrated by the foregoing analysis, the *Pruneyard* balancing test leads us to conclude that the societal interest in using the Santa Rosa Trader Joe's as a forum for exercising free speech and petitioning activities does not outweigh Trader Joe's interest in exercising exclusive control over the use of its private property. Although we have found no California authority which is directly on point, our conclusion does find support in the case law. Both federal and state courts have recognized that property does not "lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there." (*Bank of Stockton, supra*, 44 Cal.App.4th at p. 1627, quoting *Lloyd Corp.* v. *Tanner, supra*, 407 U.S. at p. 569 [92 S.Ct. at p. 2229.) Trader Joe's opens its property to the public so the public can buy goods. It does not offer its property for any other use. Thus, in contrast to Pruneyard and other multipurpose shopping centers, the Santa Rosa Trader Joe's does not have a "public character." (Cf. *Pruneyard, supra*, 23 Cal.3d at p. 910.)

Our conclusion is also supported by *Allred* v. *Harris* (1993) 14 Cal.App.4th 1386 [18 Cal.Rptr.2d 530] (*Allred*) and similar cases discussed in *Allred*.[4] *Allred* is factually different because it involved a privately owned medical center as opposed to a retail establishment. Nevertheless, the *Allred* court's interpretation of *Pruneyard* reinforces our own. It interpreted *Pruneyard* as holding that ". . . when private property is generally open to the public and functions as the equivalent of a traditional public forum, then the California Constitution protected speech, reasonably exercised, on the property, even though the property was privately owned." (*Id.* at p. 1390.) In holding that the medical center at issue in that case was not subject to *Pruneyard*, the *Allred* court emphasized that the property was private in character and lacked the attributes of a public forum. (*Id.* at p. 1392.) Although for different reasons, we reach the same conclusion about the Santa Rosa Trader Joe's.

Appellants' authority does not alter our conclusion. They rely primarily on *In re Lane* (1969) 71 Cal.2d 872 [79 Cal.Rptr. 729, 457 P.2d 561] (*Lane*).

---

[4]See *Planned Parenthood* v. *Wilson* (1991) 234 Cal.App.3d 1662, 1668-1672 [286 Cal.Rptr. 427]; *Allred* v. *Shawley* (1991) 232 Cal.App.3d 1489, 1501-1502 [284 Cal.Rptr. 140].

That case involved the officer of a labor union who suffered misdemeanor convictions for distributing handbills on the privately owned sidewalk in front of the Calico Market. (*Id.* at pp. 873-874.) The handbills urged individuals to not patronize the Calico Market because it advertised in newspapers that were involved in labor union disputes. Our Supreme Court overturned the union officer's convictions, holding that his activities were protected speech under the federal Constitution. (*Id.* at pp. 874-878.) The *Lane* court applied the "established" rule that "peaceful picketing or hand-billing 'carried on in a location open generally to the public is, absent other factors involving the purpose or manner of the picketing, protected by the First Amendment.' [Citation.]" (*Id.* at p. 874.) The court found this rule applied to the privately owned sidewalk which was used as the sole means of ingress and egress to and from the Calico store because (1) the sidewalk was opened to the public and (2) holding that the privately owned sidewalk was " 'off limits' " for the exercise of First Amendment rights would permit the store owner to immunize itself from "on-the-spot public criticism." (*Id.* at p. 876.)

*Lane* is inapposite. In contrast to the present case, the expressive activity at issue in *Lane* was picketing by a labor union. The defendant's store was involved in that labor dispute. The court's reasoning was substantially influenced by this fact and the need to prevent the defendant from insulating himself from public comment for his role in the labor dispute. Indeed, after *Pruneyard* was decided, our Supreme Court subsequently distinguished *Lane* from other cases involving petitioning activity at shopping centers because the nature of the activity at issue in *Lane*, picketing by a labor union, justified the impingement on private property rights. (See *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 326-327 [158 Cal.Rptr. 370, 599 P.2d 676].)

Further, the *Lane* court based its holding on federal Supreme Court precedent which was subsequently overruled. (See *Food Employess* v. *Logan Plaza* (1968) 391 U.S. 308 [88 S.Ct. 1601, 20 L.Ed.2d 603], overruled by *Lloyd Corp.* v. *Tanner, supra,* 407 U.S. 551, as recognized in *Hudgens* v. *NLRB* (1976) 424 U.S. 507, 517-518 [96 S.Ct. 1029, 1035-1036, 47 L.Ed.2d 196].) Appellants contend that *Lane* is, nevertheless, good law because that case was expressly approved and thereby revitalized by the *Pruneyard* court. The *Pruneyard* court did cite *Lane* as an example of a case in which speech rights overrode conflicting property interests. (*Pruneyard, supra,* 23 Cal.3d at pp. 908-909.) The court noted that, even though *Lane* relied on federal law which subsequently took a divergent course, it was still useful as precedent.

This positive reference to *Lane* does not alter our analysis of *Pruneyard* or our conclusion in this case. To the extent *Lane* is good law, it is factually inapposite because it involved a labor dispute in which the defendant was involved. Further, the *Pruneyard* court's reference to *Lane* was brief and collateral; the court did not expressly or implicitly hold that our state constitution protects free speech and petitioning rights at privately owned stand-alone grocery stores. Indeed, as already noted, no published decision in this state contains such a holding.[5]

Appellants contend that *Bank of Stockton, supra,* 44 Cal.App.4th at page 1630, supports their contention that *Pruneyard* applies to a free-standing supermarket like the Santa Rosa Trader Joe's. In that case, a dispute arose between a bank and a religious organization that wanted to solicit donations from bank customers on bank-owned property. The bank obtained a preliminary injunction preventing the defendant from soliciting on the private sidewalk connecting the bank's two-story building to its parking lot. The Court of Appeal affirmed. (*Id.* at p. 1625.)

The *Bank of Stockton* court interpreted *Pruneyard* as establishing that "private property owners could not prohibit free speech and could impose only appropriate time, place, and manner restrictions." (*Bank of Stockton, supra,* 44 Cal.App.4th at p. 1629.) The court then focused on the *Pruneyard* court's observation that it did " ' "not have under consideration the property or privacy rights of an individual homeowner or the proprietor of *a modest retail establishment.*" ' " (*Ibid.,* quoting *Pruneyard, supra,* 23 Cal.3d at p. 910.) From this statement, the *Bank of Stockton* court extracted a "rule" that *Pruneyard* does not apply to modest retail establishments. According to the *Bank of Stockton* court, "[w]hatever 'modest retail establishment' means, it does not include a large shopping center and, in light of *In re Lane, supra,* 71 Cal.2d 872, decided before [*Pruneyard*] but relied on in [*Pruneyard*], it also does not include a 'large "super-market-type" grocery store.' [Citation.]" (*Bank of Stockton, supra,* 44 Cal.App.4th at p. 1630.) The court then reasoned that the bank was comparable to a modest retail establishment and, therefore, *Pruneyard* did not apply. (*Id.* at pp. 1630-1631.)

In the present case, appellants contend that *Bank of Stockton* establishes that a large grocery store is not a modest retail establishment and is,

---

[5]Nor have appellants identified any other jurisdiction that has interpreted its state constitution in such a way. By contrast, Trader Joe's does support its position with out-of-state authority. Of the cases brought to our attention, the most factually similar case is *Wabban, Inc.* v. *Brookhart* (1996) 142 Or.App. 261 [921 P.2d 409]. In that case the court held that the state constitutional right to engage in expressive activity at shopping malls did not extend to two HomeBase stores. See also *New Jersey Coalition* v. *J.M.B.* (1994) 138 N.J. 326 [650 A.2d 757, 780-781, 52 A.L.R.5th 777].

therefore, subject to *Pruneyard*. But we have already rejected this conclusion. The dicta from *Bank of Stockton* upon which appellants rely misinterprets *Pruneyard*'s reference to *Lane*. As we have already explained, the *Pruneyard* court's brief discussion of *Lane* was not equivalent to a holding that the state constitution guarantees that speech and petitioning activity can be exercised at large grocery stores. Further, and equally important, the *Pruneyard* court's acknowledgment that it was not called upon to consider the property or privacy rights of a proprietor of a modest retail establishment does not warrant automatically extending the holding of that case to any property that cannot be characterized as a modest retail establishment. Indeed, the only rights that the *Pruneyard* court expressly considered were the rights of the parties before it. In doing so, the court developed the balancing test we have articulated and applied to the situation presented by this case.

Appellants repeatedly contend that size is the determinative issue in this case and that the very fact that the Santa Rosa Trader Joe's is sufficiently large to attract solicitors establishes that it is a public forum under *Pruneyard*. This argument eviscerates private property rights, something the *Pruneyard* court was careful not to do. Of course, size is a relevant factor, but only one factor. Here, although appellants can easily identify stores that are smaller, the size factor cuts both ways. The Santa Rosa Trader Joe's is significantly smaller in size than the Pruneyard Shopping Center. (*Pruneyard, supra*, 23 Cal.3d at p. 902.) It is also smaller in size than the grocery store in *Lane* and the bank in *Bank of Stockton*. (*Lane, supra*, 71 Cal.2d at p. 873; *Bank of Stockton, supra*, 44 Cal.App.4th at p. 1630.) In any event, *Pruneyard* does not make "size" the determinative factor. The size of the Santa Rosa Trader Joe's, when weighed with the other factors discussed above, supports our conclusions that the Santa Rosa Trader Joe's is not uniquely suited to be a public forum and that Trader Joe's private property interests are not outweighed by appellants' interests in this case.

This record does not establish that appellants have a state constitutional right to engage in the challenged activity. Thus, the trial court did not abuse its discretion by concluding that Trader Joe's is likely to succeed on the merits of its claims that it has the right to exclude appellants and to obtain injunctive relief as a remedy for continuing trespass.

B. *Will Trader Joe's Suffer Greater Harm Absent Issuance of the Injunction?*

As noted at outset of our discussion, the second requirement imposed on a plaintiff seeking a preliminary injunction is to show that the plaintiff will suffer greater harm if the preliminary injunction is denied than the defendant will suffer if the preliminary injunction is granted. (*Bank of Stockton, supra*,

44 Cal.App.4th at p. 1631.) According to the *Bank of Stoctkon* court, in this context, this second inquiry merges into the first since both parties assert constitutional rights and the potential harm to those rights depends directly on who succeeds on the merits. (*Ibid.*)

In any event, Trader Joe's produced sufficient evidence of injury resulting from appellants' activities to support the trial court's discretionary ruling in its favor. Store manager Anderson's declaration contains evidence that appellants disrupted store business and that customers complained. We are not persuaded by appellants mischaracterization of this evidence as a "heckler's veto." That term refers to hostile reaction to a disfavored viewpoint. (See *San Diego Unified Port District* v. *U.S. Citizens Patrol* (1998) 63 Cal.App.4th 964, 970 [74 Cal.Rptr.2d 364].) There is no evidence in this record that Trader Joe's or any of its customers object to or are even aware of the substantive content of appellants' activities. Indeed this record does not even disclose what substantive views appellants hold.

The record supports the trial court's conclusions that Trader Joe's will likely succeed on the merits of its claims against appellants and that the balance of harms weighs in Trader Joe's favor. There was no abuse of discretion.

## IV.  Disposition

The order granting the preliminary injunction is affirmed.

Kline, P. J., and Lambden, J., concurred.