61 Cal.2d 766 (1964)
394 P.2d 921
40 Cal. Rptr. 233
SCHWARTZ-TORRANCE INVESTMENT CORPORATION, Plaintiff and Respondent,
v.
BAKERY AND CONFECTIONERY WORKERS' UNION, LOCAL NO. 31, Defendant and Appellant.
Docket No. L.A. 27282.
Supreme Court of California. In Bank.
August 31, 1964.
*767 Brundage, Hackler & Roseman, Eugene Miller, Julius Reich and Charles K. Hackler for Defendant and Appellant.
Carroll, Davis, Burdick & McDonough, Roland C. Davis, Lionel Richman, A.L. Wirin and Fred Okrand as Amici Curiae on behalf of Defendant and Appellant.
McLaughlin & McLaughlin, Joseph M. McLaughlin, James A. McLaughlin, Jr., and Frederick A. Morgan for Plaintiff and Respondent.
Angell, Adams, Gochnauer, Elder & Holmes, Pembroke Gochnauer, George R. Richter, Jr., and David A. Maddux as Amici Curiae on behalf of Plaintiff and Respondent.
TOBRINER, J.
This case requires a decision upon the sole issue of whether the owner of a shopping center may enjoin as trespass a union's peaceful picketing of premises leased by an employer from the owner of the shopping center. As *768 we shall explain, we have concluded that such owner is not entitled to enjoin the union from so picketing.
Plaintiff owns and operates a shopping center located on a 6-acre parcel of land leased from the City of Torrance. The shopping center consists of a parking lot, driveways, sidewalks, and several stores. Plaintiff subleases the stores to various tenants, but retains exclusive control over the parking lot and the sidewalks, including those sidewalks adjacent to the subleased stores. Tom Revels, the owner of Tom Revels Bakery, leases a store in plaintiff's shopping center for a monthly rental of $450 plus 5 per cent of the gross income of the bakery.
Defendant union sought unsuccessfully to organize the four or five employees of the Tom Revels Bakery and towards that end began on February 16, 1962, to engage in picketing in front of the bakery on the sidewalks belonging to the plaintiff. The pickets carried signs stating that, "Revels Bakery is nonunion and is unfair to organized labor. Please do not patronize. Bakers Union Local 31."
Plaintiff initiated this action to enjoin defendant from trespassing on plaintiff's property. After trial the superior court entered judgment enjoining defendant and its members from entering plaintiff's property for the purpose of picketing. Defendant appeals from that judgment.
The problem presented in this case is one of accommodating conflicting interests: plaintiff's assertion of its right to the exclusive use of the shopping center premises to which the public in general has been invited as against the union's right of communication of its position which, it asserts, rests upon public policy and constitutional protection. Resolution turns upon a balancing of the union's interest in such peaceful picketing for a lawful purpose[1] against the plaintiff's interest in the possession and enjoyment of his property in these special circumstances.
We turn first to an analysis of the interests of the union.
[1] Picketing by a labor union constitutes an integral component of the process of collective bargaining; as such it *769 involves the exercise of a right which is both statutorily and constitutionally sanctioned.
[2] The Legislature has expressly declared that the public policy of California favors concerted activities of employees for the purpose of collective bargaining or other mutual aid or protection. (Lab. Code, § 923; see Messner v. Journeymen Barbers etc. International Union (1960) 53 Cal.2d 873, 882 [4 Cal. Rptr. 179, 351 P.2d 347]; Shafer v. Registered Pharmacists Union (1940) 16 Cal.2d 379, 385 [106 P.2d 403]; Nahas v. Local 905, Retail Clerks Intl. Assn. (1956) 144 Cal. App.2d 808, 813 [301 P.2d 932, 302 P.2d 829].) Moreover, the Legislature has enacted this policy into an exception to the criminal trespass law. (Pen. Code, § 552.1.) Thus recently we reversed the conviction of a labor union official for picketing on the property of a nonparticipant in the labor dispute. Construing section 552.1, which excepts from the criminal trespass statute any "lawful activity for the purpose of engaging in any organizational effort on behalf of any labor union ..." we concluded that "... the Legislature in dealing with trespasses ... has specifically subordinated the rights of the property owner to those of persons engaging in lawful labor activities." (In re Zerbe (1964) 60 Cal.2d 666, 668 [36 Cal. Rptr. 286, 388 P.2d 182].) The policy of the state as expressed in the Labor Code accords with that embodied in federal legislation.[2]
[3] The picketing, indeed, involves an exercise of the constitutionally protected right of freedom of speech. In Thornhill *770 v. Alabama (1939) 310 U.S. 88, 102 [60 S.Ct. 736, 84 L.Ed. 1093], the United States Supreme Court, in striking down a blanket ban upon all picketing, declared that "... the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution."
Although the court subsequently qualified its broad ruling in Thornhill by adopting a test permitting states to enjoin peaceful picketing for a purpose antithetical to some valid state policy,[3] the bedrock principle of Thornhill, that picketing constitutes a manifestation of free speech, remains intact.[4] This court has frequently acknowledged and applied the Thornhill principle. Thus in Hughes v. Superior Court (1948) 32 Cal.2d 850, 854 [198 P.2d 885], we said that "It is now established as the law that `the right to picket peacefully and truthfully is one of organized labor's lawful means of advertising its grievances to the public, and as such is guaranteed by the Constitution as an incident of freedom of speech.'" (See McKay v. Retail Auto Salesmen's Local Union 1067 (1942) 16 Cal.2d 311, 319 [106 P.2d 373]; Magill Bros. v. Building Service etc. Union (1942) 20 Cal.2d 506, 511-512 [127 P.2d 542]; Rees v. City of Palm Springs (1961) 188 Cal. App.2d 339, 346 [10 Cal. Rptr. 386].)
Nor is the union's interest in picketing diminished because it may communicate its message at other, admittedly less advantageous, locations off plaintiff's premises. As we said in Wollam v. City of Palm Springs (1963) 59 Cal.2d 276, 284 [29 Cal. Rptr. 1, 379 P.2d 481], "... freedom of speech entails *771 communication; it contemplates effective communication." (Cf. Schneider v. Irvington (1939) 308 U.S. 147, 163 [60 S.Ct. 146, 84 L.Ed. 155].) The evidence further discloses that in the instant case picketing on other nearby public streets or sidewalks would entail the danger of traffic tie-ups, confusion as to the object of the picketing, and the requirements of larger signs and more pickets.
On the other hand, the countervailing interest which plaintiff endeavors to vindicate emanates from the exclusive possession and enjoyment of private property. Because of the public character of the shopping center, however, the impairment of plaintiff's interest must be largely theoretical. Plaintiff has fully opened his property to the public. Approximately 10,000 people visit the premises weekly. The shopping center affords unrestricted access between its parking lot and the public streets. The center constitutes a conglomeration of business enterprises designed to provide essential services to all members of the local community; "access by the public is the very reason for its existence." (Lombard v. United States (1963) 373 U.S. 267 [83 S.Ct. 1122, 10 L.Ed.2d 338] (concurring opinion).)
Plaintiff suffers no significant harm in the deprivation of absolute power to prohibit peaceful picketing upon property to which it has invited the entire public. As we observed in In re Zerbe (1964) 60 Cal.2d 666, 670 [36 Cal. Rptr. 286, 388 P.2d 182], "The infringement of [plaintiff's] property rights was technical rather than substantial." The Supreme Court of the United States in Marsh v. Alabama (1946) 326 U.S. 501 [66 S.Ct. 276, 90 L.Ed. 265], describes the diluted nature of a property right in premises opened to the public. In upsetting the conviction of a defendant who had distributed religious literature on the sidewalks of a company town, that court said, "Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." (Id. at p. 506.)[5]
*772 [4] We conclude that the defendant's interest in picketing outweighs plaintiff's interest in vindicating a theoretical invasion of its right to exclusive control and possession of private property.
This conclusion accords with the still exiguous body of cases relating to the rights of picketers on the premises of shopping centers. A few states have adjudicated cases substantially similar to the instant one. In Amalgamated Clothing Workers of America v. Wonderland Shopping Center, Inc. (1963) 370 Mich. 547 [122 N.W.2d 785], a divided court affirmed the issuance of an injunction to restrain the shopping center from interfering with the union's right to distribute leaflets on the center's property. The court characterized the owner's right as follows: "`The change from the operation of a single store by a storekeeper to a large, complex, multiple shopping center, alters the very nature of the operation from one of a purely private character to one of public or quasi-public character. The single storekeeper would still be entitled to prevent any unauthorized intrusion on his private property. The defendants, through this large development, in a highly urban area, no longer can claim the same rights to their property. The property of the defendants has lost its identity as private property.'" (Id. at p. 794 [122 N.W.].)
In State v. Williams (Balt.Crim.Ct. Md. 1959) 44 LRRM 2357, the court reversed defendant's conviction of criminal trepass on the premises of a shopping center posted against peddlers, solicitors, and pickets, stating: "By opening it to the public, the owner's property rights have become secondary to broad use by the public, which includes the right of a labor union to engage in peaceful picketing." (Id. at p. 2360.) Similarly, in People v. Barisi (N.Y.Mag.Ct. 1948) 23 LRRM *773 2190, involving picketing against a news company which leased space in the privately owned Pennsylvania Station, the court concluded that: "... by opening up their place to the general public, the owners of the station have made it a quasi-public place, and as such their ownership is `circumscribed by the constitutional rights of those who use it.'" (Id. at p. 2191; accord Moreland Corp. v. Retail Store Emp. Union Local No. 444 (1962) 16 Wis.2d 499 [114 N.W.2d 876, 879] (dictum); Freeman v. Retail Clerks Union Local No. 1207 (1961) 58 Wn.2d 426 [363 P.2d 803, 806] (concurring opinion).)
In the only federal case directly in point, Marshall Field & Co. v. N.L.R.B. (7th Cir.1953) 200 F.2d 375, the court sustained a ruling of the National Labor Relations Board which held invalid a company rule prohibiting nonemployees from soliciting for members on a privately owned street running between two portions of the employer's large department store. The court stated that the street partakes "of the nature of a city street, even though owned by the company...." (Id. at p. 380.)
Although plaintiff admits that the proper resolution of this case must be found in an accommodation of conflicting interests, it contends that precedent from this and other jurisdictions supports its position.
Plaintiff refers first to Nahas v. Local 905, Retail Clerks Intl. Assn. (1956) 144 Cal. App.2d 808 [301 P.2d 932, 302 P.2d 829], the sole California case dealing with the shopping center problem. In Nahas the employer-tenant sued to enjoin picketing on the premises of the shopping center. The court held that the plaintiff could not exert a sufficient possessory interest to maintain the trespass action. (Id. at p. 818.) Plaintiff, however, finds in the court's opinion an intimation that the shopping center lessor could sue to enjoin the trespass on its property. Any such implication derives only from a strained construction (cf. p. 819); in any event our ruling here nullifies the effect of any dicta in Nahas that the shopping center lessor could bring such an action.[6]
*774 Plaintiff further contends that the weight of authority from other states subordinates the union's interest to the interest of the property owner. Plaintiff cites several cases, none of which support its contention. Stafford v. Hood (Tenn. Ct. App. 1963) 53 LRRM 2771, involved trespass on the parking lot of a grocery store, not a shopping center. In People v. Goduto (1961) 21 Ill.2d 605 [174 N.E.2d 385], the court held defendant guilty of criminal trespass on the Sears parking lot solely because the union engaged in picketing for an unlawful purpose. Fleming v. H.W. Ivey Constr. Co. (1959) 215 Ga. 460 [111 S.E.2d 97], did not involve picketing on the premises of a shopping center; moreover, the picketing resulted in the complete stoppage of work, and the union failed to establish that its picketing had been undertaken for a lawful purpose. Finally, in Spohrer v. Cohen (Sup.Ct. 1956) 3 Misc.2d 248 [149 N.Y.S.2d 493], defendants were punished for contempt of a temporary injunction against engaging in activities which did not contemplate a legitimate labor purpose and which violated a court order. The court expressly found that "nothing in this action ... for injunction was concerned with labor union activities." (Id. at p. 494 [149 N.Y.S.2d].)
Plaintiff finally contends that N.L.R.B. v. Babcock & Wilcox Co. (1956) 351 U.S. 105 [76 S.Ct. 679, 100 L.Ed. 975], precludes picketing in the present case. In Babcock & Wilcox the United States Supreme Court upheld an employer's right to prohibit nonemployees from distributing union literature on the company parking lot. Unlike the plaintiff's property in the present case, the Babcock & Wilcox parking lot was not generally open to the public.
We conclude that the picketing in the present case cannot be adjudged in the terms of absolute property rights; it must be considered as part of the law of labor relations, and a balance cast between the opposing interests of the union and the lessor of the shopping center. The prohibition of the picketing would in substance deprive the union of the opportunity to conduct its picketing at the most effective point of persuasion: the place of the involved business. The interest of the union thus rests upon the solid substance of public policy and constitutional right; the interest of the plaintiff lies in *775 the shadow cast by a property right worn thin by public usage.
In the light of this conclusion we need not consider defendant's contention that jurisdiction to intervene in this dispute resides exclusively in the National Labor Relations Board. (See In re Zerbe (1964) 60 Cal.2d 666, 670 [36 Cal. Rptr. 286, 388 P.2d 182].)
The judgment is reversed.
Gibson, C.J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.
NOTES
[1] Plaintiff does not, nor could it, contend that the purpose of the picketing in the instant case was unlawful. (See C.S. Smith Metropolitan Market Co. v. Lyons (1940) 16 Cal.2d 389 [106 P.2d 414]; Pezold v. Amalgamated Meat Cutters (1942) 54 Cal. App.2d 120 [128 P.2d 611]; Senn v. Tile Layers Protective Union (1936) 301 U.S. 468 [57 S.Ct. 857, 81 L.Ed. 1229].)
[2] In Messner v. Journeymen Barbers etc. International Union, supra, 53 Cal.2d 873, 883, we stated: "This court's interpretation of section 923 of the Labor Code (Shafer v. Registered Pharmacists Union, supra) is in accord with the United States Supreme Court's interpretation of a similar provisions of the Taft-Hartley Act. (§ 7, 29 U.S.C. § 157.) Pointing out that `[b]asic to the right guaranteed to employees in § 7 to form, join or assist labor organizations, is the right to engage in concerted activities to persuade other employees to join for their mutual aid and protection' the United States Supreme Court, after a review of the legislative materials, held that peaceful picketing for recognition by a union that does not represent a majority of the employees is not an unfair labor practice under § 8(b) (1) (A) [29 U.S.C. § 158 (b) (1) (A)]. (N.L.R.B. v. Drivers' Local 639, 362 U.S. 274 [80 S.Ct. 706, 4 L.Ed.2d 710]; 28 U.S.L. Week 4217, 4219, 4222, March 28, 1960.) The court's opinion makes plain that the Labor-Management Reporting and Disclosure Act of 1959 does not `... relegate this litigation to the status of an unimportant controversy over the meaning of a statute which has been significantly changed.' (Id. at p. 4218.)"
[3] See, e.g., International Brotherhood of Teamsters Local 695 v. Vogt, Inc. (1957) 354 U.S. 284 [77 S.Ct. 1166, 1 L.Ed.2d 1347]; Giboney v. Empire Storage & Ice Co. (1949) 336 U.S. 490 [69 S.Ct. 684, 93 L.Ed. 834]. Justice Frankfurter, writing in Vogt, summarized this modification of Thornhill as follows: "The implied reassessments of the broad language of the Thornhill case were finally generalized in a series of cases sustaining injunctions against peaceful picketing, even when arising in the course of a labor controversy, when such picketing was counter to valid state policy in a domain open to state regulation." (Id. at p. 291.)
[4] See Chauffeurs etc. Local Union 795 v. Newell (1957) 356 U.S. 341 [78 S.Ct. 779, 2 L.Ed.2d 809]; Cafeteria Employees Union v. Angelos (1943) 320 U.S. 293 [64 S.Ct. 126, 82 L.Ed. 58]; Bakery & Pastry Drivers etc. Local 802 v. Wohl (1942) 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178]; American Federation of Labor v. Swing (1940) 312 U.S. 321 [61 S.Ct. 568, 85 L.Ed. 855]; see generally Note (1958) 11 Vand. L.Rev. 627.
[5] Justice Cardozo has eloquently developed the thesis that "property rights" no longer enjoy the characteristic of absolutism formerly accorded them: "Property like liberty, though immune under the Constitution from destruction, is not immune from regulation essential for the common good. What the regulation shall be, every generation must work out for itself. The generation which gave us Munn v. Illinois (1876) 94 U.S. 113 [24 L.Ed. 77], and like cases, asserted the right of regulation whenever business was `affected with a public use.' ... Today there is a growing tendency in political and juristic thought to probe the principle more deeply and formulate it more broadly. Men are saying today that property, like every other social institution has a social function to fulfill. Legislation which destroys the institution is one thing. Legislation which holds it true to its function is quite another. That is the dominant theme of a new and forceful school of publicists and jurists on the continent of Europe, in England, and even here." (Cardozo, The Nature of the Judicial Process, 87-88.) (For a discussion of the public interest concept, see Tunkl v. Regents of University of California (1963) 60 Cal.2d 92, 98, fn.9 [32 Cal. Rptr. 33, 383 P.2d 441].)
[6] In an excellent analysis of the entire problem of peaceful picketing at shopping centers, the note-writer in Shopping Centers and Labor Relations Law (1958) 10 Stan.L.Rev. 694, 697, points out, "There is language in the Nahas case which suggests that the landlord could prohibit the union activity. In fact, the court's reasoning would compel such a result. Since possession and dominion over the area remained in the landlord, he could maintain a trespass action." The note suggests that such reasoning leads to the result that the success of the suit would depend upon who happened to bring it.