102 Cal.Rptr.2d 392 (2000)
85 Cal.App.4th 679
WAREMART, INC., Plaintiff, Cross-defendant and Respondent,
v.
PROGRESSIVE CAMPAIGNS, INC., et al., Defendants, Cross-complainants and Appellants.
Waremart, Inc., Plaintiff, Cross-defendant and Respondent,
v.
Discovery Petition Management Co. et al., Defendants and Appellants;
National Political Consultants et al., Defendants, Cross-complainants and Appellants;
Douglas Thane et al., Defendants and Respondents.
No. C034318.
Court of Appeal, Third District.
December 18, 2000.
Review Granted March 14, 2001.
*393 Gronemeier & Associates, Dale L. Gronemeier, Pasadena, for Defendants and Appellants.
Stoel Rives, Charles F. Hinkle, Portland, OR.; Christensen & Schwarz, Nels A. Christensen, Chico, for Plaintiff and Respondent.
No appearance for Defendants and Respondents.
SCOTLAND, P.J.
We publish this case primarily to deal with some pesky dictum in one of our prior opinions. (Bank of Stockton v. Church of Soldiers (1996) 44 Cal.App.4th 1623, 52 Cal.Rptr.2d 429.) Recognizing that attorneys are resourceful advocates who will seize upon any language, including dictum, favorable to their positions, we want to ensure that what we said there in passing will now pass away, and not be misused in the future.
Defendants (hereafter referred to collectively as Progressive) employ individuals to solicit and gather signatures on initiative petitions to place measures on election ballots. After such individuals stationed themselves at the entrance of plaintiffs store in Chico and refused to leave when asked to do so, plaintiff (hereafter Waremart) sought a court order to enjoin Progressive and others from standing on the privately owned sidewalk immediately outside the entrance to Waremart's store for the purpose of soliciting customers to sign initiative petitions.
Based upon its interpretation of Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (hereafter Pruneyard) and Pruneyard's progeny, the trial court ruled that Waremart, a warehouse-style grocery store, has the right to deny entry to its premises to Progressive and others who seek to solicit signatures to qualify initiative measures. Thus, the court entered judgment in favor of Waremart after granting Waremart's motion for summary judgment.
On appeal, Progressive argues that, based upon its size, Waremart is more than a "modest retail establishment" within the meaning of Pruneyard and, thus, Progressive is entitled to solicit signatures on Waremart's premises. As we shall explain, Progressive's interpretation of Pruneyard is too expansive, and the trial court's ruling is correct. Accordingly, we shall affirm the judgment.

*394 FACTS
Waremart operates large warehouse-style supermarkets in California, Oregon, Washington, Idaho, and Nevada. The particular Waremart in question is located in Chico and is not part of a shopping center or shopping mall. It is in a single, free-standing building containing 79,324 square feet, with 55,786 square feet of selling space. The building is situated on approximately 10.45 acres, and its parking lot has spaces for 489 automobiles. There is no access to the store from any public sidewalk. The only public access is from the privately owned parking lot, across a private sidewalk, and through a set of double doors in the center of the front wall of the building. The distance from the doors to the edge of the private sidewalk surrounding the store is 17 feet, 8 inches. Signs prohibiting loitering are posted on the front of the building.
The store averages 27,500 cash register transactions per week and stocks a wide variety of merchandise. Although the majority of its goods are traditional grocery store items, some of the items sold by Waremart are of a type often sold by specialty shops, including pet supplies, books, prescription drugs, flowers, and baked goods. Waremart also sells and rents videos, and has both a delicatessen and a take-and-bake pizza counter.
Unlike many shopping centers, Waremart does not provide amenities to the public, such as places to congregate, recreational activities, or a cinema. The store has no meeting rooms, murals, artwork, information booths, or bulletin boards for public use. There are no patios, plazas, picnic areas, parks, or gardens where people can socialize. Waremart does not sponsor community events, such as carnivals, flower and garden shows, or any other entertainment of any kind.
Waremart's business strategy is limited strictly to attracting customers and selling them its merchandise in a quick and efficient fashion. It prohibits all soliciting and initiative petitioning at its store, based in part on the fact that customers have complained about interference from petitioners and their rude and aggressive behavior. The retail grocery business is extremely competitive, and Waremart stores operate on a very low margin, making it very important to retain as many customers as possible.
In contrast, the Chico Mall, a large regional shopping center located directly across the street from the Waremart store, has more than 90 separate stores surrounding an interior corridor. It has approximately 487,000 square feet of selling space and parking spaces for 2,700 cars. A wide variety of public service and entertainment events occur regularly at the mall, including blood drives, musical performances by school groups, art displays, dog shows, fundraising events, carnivals, antique shows, and visits from the Easter Bunny and Santa Claus. The Chico Mall has a food court and many areas to sit and congregate. In addition, there are six free-standing restaurants or retail establishments that are not part of the enclosed mall. There is a designated area at the Chico Mall for initiative petitioners, which is used frequently to solicit signatures.
Progressive is an initiative petition contractor for several statewide initiatives in California. It employs individuals to gather signatures on initiative petitions, and it also pays independent contractors to perform this function.
On several occasions in 1997 and 1998, initiative petitioners appeared at Waremart and stationed themselves outside the entrance, where they sought to interrupt every customer entering the store. In each instance, store employees explained to the petitioners that Waremart does not allow petitioning at the store and asked them to leave. In many instances, the petitioners refused to do so, stating they had a constitutional right to petition at the store.
In 1998, after receiving complaints from customers, Waremart filed two actions in *395 which it sought to enjoin Progressive and other individuals from standing on the privately owned sidewalk immediately outside the entrance to its store for the purpose of soliciting Waremart's customers to sign initiative petitions. The actions subsequently were consolidated.
Progressive filed a cross-complaint, seeking a judgment that the California Constitution requires Waremart to permit initiative petitioning activity at its store.
Both parties filed motions for summary judgment. The trial court granted Waremart's motion and denied Progressive's motion. Based upon the undisputed facts and the holdings in Pruneyard, supra, 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 and Trader Joe's Co. v. Progressive Campaigns, Inc. (1999) 73 Cal.App.4th 425, 86 Cal.Rptr.2d 442 (hereafter Trader Joe's ), the trial court concluded that Waremart has the legal right to deny entry to its premises for the purpose of soliciting signatures on petitions to place measures on election ballots. This is so, the court ruled, because the undisputed facts demonstrated that Waremart is not a public forum or public meeting place, and that society has no special interest in using it as such. (Code Civ. Proc, § 437c, subd. (c) [a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."].)

DISCUSSION
Progressive does not contend that there are triable issues of material fact. Rather, the parties' chief disagreement concerns the correct interpretation of Pruneyard, supra, 23 Cal.3d 899, 153 Cal. Rptr. 854, 592 P.2d 341, and its application to the undisputed facts in the present case. This poses a legal question, which we consider de novo on appeal. (Unisys Corp. v. California Life & Health Ins. Guarantee Assn. (1998) 63 Cal.App.4th 634, 637, 74 Cal.Rptr.2d 106.)

I
The shopping center in Pruneyard was privately owned and consisted of approximately 21 acres, 5 of which were devoted to parking and 16 of which were occupied by walkways, plazas, and buildings containing 65 shops, 10 restaurants, and a cinema. The challenged activity involved a group of students seated at a card table in a corner of the central courtyard soliciting signatures for a petition opposing a United Nations resolution against Zionism. (Pruneyard, supra, 23 Cal.3d at p. 902, 153 Cal.Rptr. 854, 592 P.2d 341.)
Under the federal Constitution, the students did not have the right to engage in expressive activity at a privately owned shopping center where their speech was unrelated to any activity within the center itself and they had adequate alternative avenues of communication, in the sense they could engage in the activity elsewhere. (Lloyd Corp. v. Tanner (1972) 407 U.S. 551, 564-570, 92 S.Ct. 2219, 2226-2229, 33 L.Ed.2d 131, 140-143; Pruneyard, supra, 23 Cal.3d at pp. 903-904, 153 Cal.Rptr. 854, 592 P.2d 341; Trader Joe's, supra, 73 Cal.App.4th at p. 430, 86 Cal. Rptr.2d 442.)
The California Supreme Court determined that our state's Constitution affords a more expansive protection of free speech rights than does the federal Constitution. Thus, Pruneyard held that sections 2 and 3 of article I of the California Constitution protect speech and petitioning in shopping centers, subject to reasonable time, place and manner restrictions, even when the centers are privately owned. (23 Cal.3d at p. 910, 153 Cal.Rptr. 854, 592 P.2d 341.)[1]
*396 Central to the holding in Pruneyard is the recognition that urban business districts arrayed along public streets have yielded many of their historic functions to suburban shopping malls situated on private property. In many instances, such malls have replaced central business districts as the favored forum for public congregation. (23 Cal.3d at pp. 907, 910, fn. 5, 153 Cal.Rptr. 854, 592 P.2d 341.) Thus, the Pruneyard holding is premised upon the fact that large retail shopping centers today serve as the functional equivalent of the traditional town center business block, where historically the public's free speech activity was exercised. Id. at pp. 906-908, 910, fn. 5, 153 Cal.Rptr. 854, 592 P.2d 341.)
Pruneyard recognized the importance of the constitutional guarantees attaching to private ownership of property, but noted the property owner's interests were not materially injured by the challenged activity in light of the fact that the owner had fully opened his property to the public (23 Cal.3d at pp. 906, 910-911, 153 Cal.Rptr. 854, 592 P.2d 341): "`As a result of advertising and the lure of a congenial environment, 25,000 persons are induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center there]. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not interfere with normal business operations . . . would not markedly dilute defendant's property rights.'. . . ." (Id. at p. 910-911, 153 Cal.Rptr. 854, 592 P.2d 341, citations omitted.)
Pruneyard emphasized it did "`not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment...."' (23 Cal.3d at p. 910, 153 Cal. Rptr. 854, 592 P.2d 341, citation omitted.)
Taken as a whole, Pruneyard implies that privately owned smaller businesses or commercial establishments which do not assume the societal role of a town center by public invitation and dedication of private property may exclude petitioners and prohibit expressive activity unrelated to the business enterprise. (Planned Parenthood v. Wilson (1991) 234 Cal.App.3d 1662,1670, 286 Cal.Rptr. 427.)
The California Supreme Court's judgment was affirmed by the United States Supreme Court in Pruneyard Shopping Center v. Robins (1980) 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741, which concluded that "neither appellants' federally recognized property rights nor their First Amendment rights have been infringed by the California Supreme Court's decision recognizing a right of appellees to exercise state-protected rights of expression and petition on appellants' property." (Id. at p. 88, 100 S.Ct. at p. 2044, 64 L.Ed.2d at p. 756.)
In concurring opinions, Justices Powell and White joined in the decision with the understanding that it was limited to the particular type of shopping center involved. (Pruneyard Shopping Center v. Robins, supra, 447 U.S. at pp. 95-97, 100 S.Ct. at pp. 2048-2049, 64 L.Ed.2d at pp. 760-762.) "Significantly different questions would be presented if a State authorized strangers to picket or distribute leaflets in privately owned, freestanding stores and commercial premises. Nor does our decision today apply to all `shopping centers.' This generic term may include retail establishments that vary widely in size, location, and other relevant characteristics. Even large establishments may be able to show that the number or type of persons wishing to speak on their premises would create a substantial annoyance to customers that could be eliminated only by elaborate, expensive, and possibly unenforceable time, place, and manner restrictions. As the Court observes, state power to regulate private property is limited to the *397 adoption of reasonable restrictions that `do not amount to a taking without just compensation or contravene any other federal constitutional provision.'. . . ." (Id. at pp. 96-97, 100 S.Ct. at p. 2049, 64 L.Ed.2d at pp. 761-762, (cone. opn. of Powell, J.), citation omitted.)

II
Appellate decisions applying Pruneyard focus on whether the property owner had so opened up his property for public use as to make it the functional equivalent of a public forum. (See, e.g., Trader Joe's, supra, 73 Cal.App.4th at pp. 433-434, 86 Cal.Rptr.2d 442; Bank of Stockton v. Church of Soldiers, supra, 44 Cal.App.4th at p. 1630, 52 Cal.Rptr.2d 429; Allred v. Harris (1993) 14 Cal.App.4th 1386, 1390-1391, 18 Cal.Rptr.2d 530; Planned Parenthood v. Wilson, supra, 234 Cal.App.3d at pp. 1671-1672, 286 Cal.Rptr. 427; Allred v. Shmvley (1991) 232 Cal. App.3d 1489, 1501-1502, 284 Cal.Rptr. 140.) The less an owner has opened up his or her property for use by the general public, the less the owner's rights are circumscribed by the statutory and constitutional rights of those who use it. (Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union (1964) 61 Cal.2d 766, 771, 40 Cal.Rptr. 233, 394 P.2d 921; accord Allred v. Shawley, supra, at p. 1502, 284 Cal.Rptr. 140.)
Whether private property is to be considered quasi-public property subject to the exercise of constitutional rights of free speech and assembly depends in part upon the nature, purpose, and primary use of the property, the extent and nature of the public invitation to use the property, and the relationship between the ideas sought to be presented and the purpose of the forum occupants. (Planned Parenthood v. Wilson, supra, 234 Cal.App.3d at p. 1671, 286 Cal.Rptr. 427; Allred v. Shawley, supra, 232 Cal.App.3d at p. 1501, 284 Cal. Rptr. 140, 73 Ops.Cal.Atty.Gen. 213, 222-223 (1990).)
As pointed out in Trader Joe's, supra, 73 Cal.App.4th 425, 86 Cal.Rptr.2d 442, "Pruneyard instructs us to balance the competing interests of the property owner and of the society with respect to the particular property or type of property at issue to determine whether there is a state constitutional right to engage in the challenged activity." (Trader Joe's, supra, at p. 433, 86 Cal.Rptr.2d 442.) The Supreme Court did not hold that free speech and petitioning activity can be exercised only at large shopping centers or that such activities can be exercised on any property except for individual residences and modest retail establishments. (Ibid.) The size of the business is simply a factor to be weighed in balancing the competing interests of the owner and society; "[t]he smaller the business, the more weight the owners' rights will have." (Allred v. Shawley, supra, 232 Cal.App.3d at p. 1496, 284 Cal.Rptr. 140.)
Trader Joe's applied the aforementioned balancing test and concluded that the societal interest in using a Trader Joe's store in Santa Rosa as a forum for exercising free speech and petitioning activities did not outweigh Trader Joe's interest in exercising exclusive control over the use of its private property. (73 Cal.App.4th at p. 434, 86 Cal.Rptr.2d 442.) The particular store in question was a specialty retail store, offering unique grocery items. It was located in an 11,000 square-foot building, with a parking lot containing 68 spaces. (Id, at pp. 428, 429, 86 Cal.Rptr.2d 442.) Unlike the shopping center in Pruneyard, Trader Joe's was a single structure, single-use store, containing no plazas, walkways, or central courtyards for patrons to congregate and spend time together. The store sold food but had no restaurant or any place for patrons to sit and eat. It did not have a cinema or any other form of entertainment. Although the store attracted a large number of people, they came for a single purpose, to buy goods. The store did not invite the public to meet friends, to eat, to rest, to congregate, or to be entertained at its premises. *398 Thus, the store's interest in maintaining exclusive control over its private property was stronger than the interest of a shopping mall owner. (Trader Joe's, supra, at p. 433, 86 Cal.Rptr.2d 442.)
Trader Joe's noted: "[B]ecause the store is a stand-alone structure, there can be no contention that its relationship to other establishments transforms it into a public forum. In short, the Santa Rosa Trader Joe's is not a public meeting place and society has no special interest in using it as such." (73 Cal.App.4th at p. 433, 86 Cal.Rptr.2d 442.) "Both federal and state courts have recognized that property does not `lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a free-standing store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there.'... Trader Joe's opens its property to the public so the public can buy goods. It does not offer its property for any other use. Thus, in contrast to Pruneyard and other multipurpose shopping centers, the Santa Rosa Trader Joe's does not have a `public character.'. . . ." (Id. at p. 434, 86 Cal.Rptr.2d 442, citations omitted.)
Trader Joe's decision was premised in part on the absence of evidence showing the particular store at issue in that case had assumed a role comparable to shopping centers, which have supplanted central business districts as the preferred public forum according to Pruneyard. (Trader Joe's, supra, at pp. 433-434, 86 Cal.Rptr.2d 442.) In contrast, statistical evidence was presented in Pruneyard pertaining to the county where the Pruneyard Shopping Center was located, showing that a huge percentage of the county's population lived in suburban and rural communities outside the central planning area and that the preferred places to shop were the large shopping centers located in those surrounding communities. (Trader Joe's, supra, at pp. 431-432, 86 Cal.Rptr.2d 442.)

III
Progressive seeks to distinguish this case from Trader Joe's by pointing out that it submitted the declaration of Peter Navarro, an associate professor of economics and public policy, who, in Progressive's words, "cited some of the professional literature concerning the fact that shopping malls are actually declining and the fact that the privatization of the old `main street' First Amendment access in front of retail stores by stand-alone big box retail stores like Waremart is an equal or even more important phenomenon than the privatization of town squares by shopping centers which was noted in Pruneyard." According to Progressive, Navarro's declaration makes this case different from Trader Joe's, where "there was none of the evidence noted by the Supreme Court in the Pruneyard decision as showing how marketing changes have made shopping centers so vitally important for the functioning of democracy in California society." We disagree.
Navarro's declaration states that Waremart's warehouse-type stores "are effectively the `malls' of the 1990s." However, he merely describes societal trends in general, saying nothing about shopping trends in Chico where the Waremart store in question is located. As the trial court aptly pointed out, Navarro "does not suggest that the Waremart store herein is supplanting [the] central business district or shopping malls in Chico as a `preferred public forum.' It is questionable that he could do so given the existence of the much larger Chico Mall across the street from the Waremart store."
Thus, as was the situation in Trader Joe's, there is no tangible evidence that Waremart has assumed a role in Chico as the functional equivalent of a public forum in a manner comparable to the shopping center in Pruneyard. Waremart is open to the general public, but its invitation is limited to the transaction of business. According to the declaration of its store manager, people are not permitted to loiter on *399 the premises and those who are not shopping for goods are asked to leave. Waremart expressly does not invite the public to enter for non-commercial purposes, such as to meet friends, eat, rest, be entertained, or otherwise congregate as one might in a town square or at the shopping mall in Pruneyard.
Hence, like the circumstances in Trader Joe's, Waremart's interest in maintaining exclusive control over its private property is stronger than the interest of the shopping mall owner. And the public's interest in using Waremart's store for speech and petitioning activity is not as strong as the public's interest in engaging in those activities at a larger shopping center, such as the Chico Mall located across the street. Unlike the Chico Mall, there is no place at the Waremart store for patrons to sit, converse, and eat, nor is there any form of entertainment. Although Waremart attracts a large number of people, they do not come to congregate and spend time. Rather, they come for a single purpose, i.e., to buy their groceries, a transaction many people treat as a necessary chore to be completed as quickly and efficiently as possible. Moreover, like the store in Trader Joe's, Waremart is a stand-alone structure, which precludes any contention that its relationship to other establishments transforms it into a public forum. Thus, Waremart "is not a public meeting place and society has no special interest in using it as such." (Trader Joe's, supra, 73 Cal.App.4th at p. 433, 86 Cal.Rptr.2d 442.)
Under the circumstances, the societal interest in using Waremart as a forum for exercising free speech and petitioning activities does not outweigh Waremart's interest in exercising exclusive control over the use of its private property.
A similar conclusion was reached in Waremart, Inc. v. Progressive Campaigns, Inc. (1999) 139 Wash.2d 623, 989 P.2d 524, a case in which the parties and facts involved are virtually identical to those in the present case except that the Waremart store in question is located in Washington. (Id. at pp. 525-526.)
Washington's Constitution, like California's, contains a provision endowing its citizens with the power to petition the government via the initiative process. Article II, section 1(a), amendment 72 of the Washington Constitution provides in pertinent part: "The legislative authority of the state of Washington shall be vested in the legislature, . . . but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls any . . . bill, act, or law passed by the legislature. [¶] (a) Initiative: The first power reserved by the people is the initiative." This provision protects petitioning upon private commercial properties, such as large shopping malls that have the earmarks of a town square, downtown area, or other public forum. (Waremart, Inc. v. Progressive Campaigns, Inc., supra, 989 P.2d at pp. 529-531; Alderwood Assoc. v. Wash. Envir. Council (1981) 96 Wash.2d 230, 635 P.2d 108.)[2]
After balancing the nature and use of Waremart's property, the scope of the invitation that Waremart has extended to the public, and whether barring Progressive's initiative petitioning activity would significantly undermine the effectiveness of the initiative process, the Washington Supreme Court concluded that Waremart's property is not the equivalent of a public forum and that Progressive does not have a constitutionally protected right to enter Waremart's property to solicit signatures for initiative petitions. (Waremart, Inc. v. *400 Progressive Campaigns, Inc., supra, 989 P.2d at pp. 529-533.) In reaching this conclusion, the court relied in part on related California appellate decisions, including Pruneyard, noting they were consistent with Washington law. (Id. at pp. 532-533.)

IV
Progressive contends that prohibiting it from petitioning on Waremart's private sidewalk is contrary to the California Supreme Court's decision in In re Lane (1969) 71 Cal.2d 872, 79 Cal.Rptr. 729, 457 P.2d 561, which held that, "when a business establishment invites the public generally to patronize its store and in doing so to traverse a sidewalk opened for access by the public[,] the fact of private ownership of the sidewalk does not operate to strip the members of the public of their rights to exercise First Amendment privileges on the sidewalk at or near the place of entry to the establishment." (Id at p. 878, 79 Cal.Rptr. 729, 457 P.2d 561.)
Progressive acknowledges that, rather than interpreting state constitutional rights to speech, the holding of In re Lane was based solely upon First Amendment law that no longer is viable in light of Lloyd Corp. v. Tanner, supra, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131. Nonetheless, Progressive argues In re Lane was cited with approval in Pruneyard, supra, 23 Cal.3d at pages 908 through 909, 153 Cal.Rptr. 854, 592 P.2d 341, in a manner indicating the California Supreme Court implicitly held that In re Lane correctly interpreted free speech rights under the California Constitution. Consequently, Progressive believes there is an entitlement to petition on Waremart's property because In re Lane permitted expressive activity at a free-standing grocery store. We disagree.
In re Lane concerned the distribution of handbills on a supermarket's private sidewalk by an officer of a labor union involved in a labor dispute with the publisher of certain newspapers. The handbills urged customers not to patronize the supermarket because it advertised in the publisher's newspapers. (71 Cal.2d at pp. 873-874, 79 Cal.Rptr. 729, 457 P.2d 561.) Relying both on First Amendment law and state labor policy, In re Lane overturned the union officer's conviction for violating city ordinances by remaining on the supermarket property after being asked to leave. (Id. at pp. 875-879, 79 Cal.Rptr. 729, 457 P.2d 561.) The court noted: "If we were to hold the particular sidewalk area to be `off limits' for the exercise of First Amendment rights in effect we would be saying that by erecting a 'cordon sanitaire' around its store, [the store] has succeeded in immunizing itself from on-the-spot public criticism." (Id. at p. 876, 79 Cal.Rptr. 729, 457 P.2d 561.)
Pruneyard cited to In re Lane and Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union, supra, 61 Cal.2d 766, 40 Cal.Rptr. 233, 394 P.2d 921 (hereafter Schwartz-Torrance), involving union picketing at a bakery, as evidence of the strength of liberty of speech in California. (Pruneyard, supra, 23 Cal.3d at p. 908, 153 Cal.Rptr. 854, 592 P.2d 341.) It stated: "The fact that those opinions cited federal [First Amendment] law that subsequently took a divergent course does not diminish their usefulness as precedent." (Ibid.) It is this language upon which Progressive relies as evidence that Pruneyard adopted the holding of In re Lane as representative of expressive rights under the California Constitution.
A similar contention was raised and rejected in Trader Joe's, which explained: the expressive activity at issue in In re Lane was picketing by a labor union at a store involved in the labor dispute; the reasoning of In re Lane was influenced by this fact and by the need to prevent the store from insulating itself from public comment for its role in the labor dispute, which was an important factor in weighing the competing interests of the property owner and the public; the reference in Pruneyard to In re Lane was brief and *401 collateral; Pruneyard did not expressly or implicitly hold that our state Constitution protects free speech and petitioning rights at privately owned stand-alone grocery stores; rather, Pruneyard merely cited In re Lane as an example of a case in which speech rights overrode conflicting property interests when these competing interests were weighed in the balance. (Trader Joe's, supra, 73 Cal.App.4th at pp. 435-436, 86 Cal.Rptr.2d 442.)
Thus, Trader Joe's concluded In re Lane was factually inapposite because it involved a labor dispute, not an attempt to solicit customers to sign initiative petitions. (Trader Joe's, supra, 73 Cal.App.4th at p. 436, 86 Cal.Rptr.2d 442.)
We agree that Pruneyard's reference to the labor union cases of In re Lane and Schwartz-Torrance was "simply for the proposition that the property rights of the shopping centers were not absolute but were subject to a balancing process in determining the right to access." (Union of Needletrades, etc. Employees v. Superior Court (1997) 56 Cal.App.4th 996, 1011, fn. 4, 65 Cal.Rptr.2d 838.) Because the "activists" were involved in protected union activity and not merely expressing opinions, "this . . . strengthened their interests, which in turn tipped the balance (against the private [property] owner's interests) in [the activists'] favor." (Allred v. Shawley, supra, 232 Cal.App.3d at p. 1504, 284 Cal.Rptr. 140.)
Accordingly, we agree the value of In re Lane as precedent is limited by its labor law context.
This conclusion is supported by Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters (1979) 25 Cal.3d 317, 158 Cal.Rptr. 370, 599 P.2d 676 (hereafter Sears ), decided after Pruneyard. In Sears, the Supreme Court reviewed an order restraining union officers and members from peacefully picketing on a privately owned sidewalk surrounding the plaintiffs stand-alone department store. While the case was pending on appeal, "the Legislature enacted the Moscone Act, Code of Civil Procedure section 527.3, which limits the equity jurisdiction of superior courts in granting injunctions in cases involving labor disputes." (Sears, supra, at pp. 320-321, 158 Cal.Rptr. 370, 599 P.2d 676.) Sears cited Schwartz-Torrance and In re Lane as establishing the legality of picketing on private sidewalks outside the store as a matter of state labor law. (Sears, supra, at p. 328, 158 Cal.Rptr. 370, 599 P.2d 676.) Thus, Sears concluded that "the sidewalk outside a retail store has become the traditional and accepted place where unions may, by peaceful picketing, present to the public their views respecting a labor dispute with that store. Recognized as lawful by the decisions of this court, such picketing likewise finds statutory sanction in the Moscone Act, and enjoys protection from injunction by the terms of that act. In such context the location of the store whether it is on the main street of the downtown section of the metropolitan area, in a suburban shopping center or in a parking lot, does not make any difference. Peaceful picketing outside the store, involving neither fraud, violence, breach of the peace, nor interference with access or egress, is not subject to the injunction jurisdiction of the courts." (Id. at pp. 332-333, 158 Cal.Rptr. 370, 599 P.2d 676, italics added.)
In sum, we agree with Trader Joe's that neither In re Lane nor Pruneyard held expressive activity always is protected at large stand-alone supermarkets.

V
This brings us to the dictum in Bank of Stockton v. Church of Soldiers, supra, 44 Cal.App.4th 1623, 52 Cal.Rptr.2d 429 (hereafter Bank of Stockton.)
Progressive argues that our interpretation of In re Lane and our adoption of Trader Joe's holding that Pruneyard speech rights do not extend necessarily to all large free-standing supermarket grocery stores is contrary to our decision in Bank of Stockton.
*402 In Bank of Stockton, we were called upon to decide whether the trial court abused its discretion in granting a preliminary injunction preventing a religious organization from soliciting donations from bank customers on bank-owned property. (Id. at p. 1625, 52 Cal.Rptr.2d 429.) We upheld the preliminary injunction on the ground that the bank was not the equivalent of a public forum because it was a modest retail establishment that did not provide a place for the general public to congregate and take advantage of various amenities, and the religious organization's soliciting was unrelated to the bank's activities. (Id. at pp. 1629-1631, 52 Cal.Rptr.2d 429.)
In reaching this conclusion, we stated that Pruneyard had "resurrected" In re Lane and "convert[ed][it] into state, rather than federal, law precedent[ ]." (Bank of Stockton, supra, 44 Cal.App.4th at p. 1629, 52 Cal.Rptr.2d 429.) Then, we asserted: "Whatever `modest retail establishment' means, it does not include a large shopping center and, in light of In re Lane, supra, 71 Cal.2d 872, 79 Cal.Rptr. 729, 457 P.2d 561, decided before [Pruneyard] but relied on in [Pruneyard], it also does not include a `large "super-market-type" grocery store.'" (Bank of Stockton, supra, at p. 1630, 52 Cal.Rptr.2d 429, citing Pruneyard, supra, 23 Cal.3d at pp. 908-909, 153 Cal.Rptr. 854, 592 P.2d 341.)
This apparent bright-line rulethat a modest retail establishment within the meaning of Pruneyard does not include a large super-market-type grocery store (such as Waremart)was dictum, as Bank of Stockton was not required to decide whether a large super-market-type grocery store is the equivalent of a public forum within the meaning of Pruneyard. Moreover, for the reasons stated above (Part IV, ante), this dictum misinterprets Pruneyard's reference to In re Lane.
Accordingly, we back away from our erroneous dictum in Bank of Stockton and decline to follow.

VI
Progressive also relies on N.L.R.B. v. Calkins (9th Cir.1999) 187 F.3d 1080 (hereafter Calkins), which upheld a National Labor Relations Board order finding that a supermarket owner committed an unfair labor practice by threatening to have non-employee union representatives arrested for handbilling and picketing in furtherance of a consumer boycott on the store's privately owned walkway and parking lot.
According to Progressive, Calkins held that California law prohibits owners of general access supermarkets from excluding speech activity on their private adjacent sidewalks and parking lots because such stores are not "modest retail establishments" within the meaning of Pruneyard. (Calkins, supra, 187 F.3d at pp. 1090-1092.)
Because Calkins is a decision of a federal court, it is not binding or controlling in this matter involving state law. (Howard Contracting, Inc. v. G.A. Mac-Donald Construction Co. (1998) 71 Cal. App.4th 38, 52, 83 Cal.Rptr.2d 590.) Furthermore, it is not persuasive for several reasons.
First, Calkins relies on the dictum in Bank of Stockton, which we have disapproved, and on its overly expansive misinterpretation of In re Lane. (Calkins, supra, 187 F.3d at pp. 1090-1092.) Second, Calkins does not mention or distinguish Trader Joe's. In the absence of a decision from a state's highest court, a federal court must consider rulings of intermediate appellate state courts in ascertaining state law and apply such rulings absent a persuasive reason to disregard them. (West v. American Teleph. & Teleg. Co. (1940) 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 144; Lewis v. Telephone Employees Credit Union (9th Cir.1996) 87 F.3d 1537, 1545.)[3] Third, Calkins is factually inapposite because it involves expressive *403 activity by a labor union which, as we explained previously, is afforded a greater protection where the union is engaged in a dispute with the property owner. Under the circumstances, Progressive's reliance on Calkins is misplaced.

VII
For the reasons stated in this opinion, we conclude the trial court did not err in granting Waremart's motion for summary judgment because Progressive does not have a state constitutional right to engage in the challenged activity.[4]

DISPOSITION
The judgment is affirmed.
MORRISON, J., and HULL, J., concur.
NOTES
[1] Article I, section 2 of the California Constitution states in pertinent part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Article I, section 3 of the California Constitution states: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."
[2] There is no similar protection under the Iree speech provision of the Washington Constitution (art. I, § 5), which protects an individual only against actions of the state, not against the actions of other individuals. (Waremart, Inc. v. Progressive Campaigns, Inc., supra, 989 P.2d at p. 528, citing Southcenter v. National Dem. Policy Com. (1989) 113 Wash.2d 413, 780 P.2d 1282.)
[3] Calkins was decided on August 11, 1999, 34 days after Trader Joe's was filed on July 8, 1999. Citing California Rules of Court, rule 28 (hereafter rule 28), Progressive claims Trader Joe's was not final because it was decided less than 40 days before Calkins; thus, Calkins did not need to address the case. Progressive misinterprets rule 28, which concerns the deadline for filing a petition for review with the Supreme Court. According to rule 28(b), a petition for review must be filed "within 10 days after the decision of the Court of Appeal becomes final as to that court. . . ." No petition for the review of Trader Joe's was filed. Rule 24 states in pertinent part: "A decision of a Court of Appeal becomes final as to that court 30 days after filing." Accordingly, Trader Joe's was final at the time it was ignored by Calkins.
[4] In light of our conclusion, we need not address Waremart's contentions that forcing it to allow Progressive to solicit signatures for an initiative upon its private property would violate Waremart's First Amendment rights and constitute a taking under the Fifth Amendment.